# IN THE COURT OF APPEALS OF IOWA

No. 15-1085
Filed September 23, 2015

**IN THE INTEREST OF T.H., T.H., AND T.H.,**
**Minor Children,**

**K.H., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Pottawattamie County, Gary K. Anderson, District Associate Judge.

The mother appeals the district court's termination of her parental rights to her children, T.H., T.H., and T.H. **AFFIRMED.**

Scott Strait, Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Matthew Wilbur, County Attorney, and Dawn Landon, Assistant County Attorney, for appellee State.

Roberta Megel of the State Public Defender, Council Bluffs, for appellee father.

Marti Nerenstone, Council Bluffs, attorney and guardian ad litem for minor children.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**VOGEL, Judge.**

The mother appeals the termination of her parental rights to her three children, asserting the State did not prove the allegations of Iowa Code section 232.116(1)(d), (e), or (i) (2013); the State did not make reasonable efforts to reunify her with the children; and termination is not in the children's best interests. We conclude the court properly terminated the mother's rights pursuant to paragraph (d), after the offer of reasonable reunification services. Furthermore, due to the mother's unresolved mental health issues, unemployment, and lack of housing, it is in the children's best interests the mother's rights are terminated. Consequently, we affirm the district court's order terminating the mother's parental rights.

The children, T.H.-1 born in 2000, T.H.-2 born in 2001, and T.H.-3 born in 2007, were removed from mother's care in June 2014. They have been living primarily with their maternal grandparents since October 2011. The Department of Human Services (DHS) became involved approximately seven years ago, with a prior child in need of assistance (CINA) adjudication. The June 2014 removal came after the mother was in a physical altercation, biting T.H.-2 over a cell phone struggle. The mother also assaulted her own mother. In November 2014 she pleaded guilty to child endangerment causing bodily injury. This incident also resulted in a founded child-abuse assessment. Following a July 16, 2014 hearing, the children were adjudicated CINA pursuant to Iowa Code section 232.2(6)(b), (c)(2), and (n), and remained in their grandparent's care.

The mother has mental health issues, which include bipolar disorder, anger management problems, and an unspecified personality disorder with

schizoid and anti-social traits. Individual counseling was recommended, but the mother has failed to consistently attend appointments. The DHS worker noted that: "It appears [the mother] has never truly gotten a grasp on her issues. This worker feels that she has a long road ahead of her to work through her issues and to understand how her mental health affects her and the others around her." Additionally, the mother has suffered from substance abuse issues, though her psychological evaluation noted she did not have cannabis or amphetamine use disorder. The three drug screens for which the mother appeared—in November and December 2014—were negative.

During the course of the underlying proceedings, the mother was combative with DHS workers, blaming them when things did not work out for the mother. She also refused to engage the majority of the times the DHS worker attempted to contact her. At the adjudication hearing held on October 9, 2014, the mother verbally attacked anyone who she believed had a negative opinion of her. When court personnel requested that she cease verbally harassing those around her, the mother refused, and she was arrested for disorderly conduct.

The mother's housing situation has remained unstable throughout the pendency of these proceedings. She has never maintained her own residence; rather, she has stayed with different individuals or has lived in her vehicle. At the termination hearing, the mother testified she was living in Omaha, Nebraska, or "wherever my car sits." The mother is pregnant with twins fathered by an on-again-off-again paramour, who has been violent towards the mother. As of the time of the termination hearing, the mother was not employed due to medical issues related to her pregnancy.

The following services have been offered to the mother: supervised visitation; individual counseling; family safety, risk, and permanency services; transportation; housing referrals; employment referrals; emergency assistance availability; community resource information; and drug screens.

Following the mother's minimum cooperation with offered services, a termination of parental rights petition was filed in November 2014, and came on for hearing on January 6, 2015. The hearing was suspended until March 24, so the mother could engage is services. However, the mother's attempts to properly interact with the children failed. As the DHS worker noted:

> During the final interaction, [T.H.-1] had written a letter to [the mother] stating that he no longer wanted to see her. [The mother] did not take this well and she blew up. [The mother] tore up his letter and some other papers she had in her hands and threw them in his face. Reportedly [the mother] then left the office and found her mother in the waiting area and got nose to nose with her screaming in her face. [T.H.-1] was left upset by this interaction.

The contested termination hearing was held from Marcy 24 to March 27, 2015. On June 9, 2015, the district court filed an order terminating the mother's parental rights[1] pursuant to Iowa Code section 232.116(1)(d), (e), and (i), and she now appeals.[2]

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.* When the court terminates parental rights on more than one statutory ground, we

---

[1] The father's rights were also terminated; he does not appeal.
[2] The children's guardian ad litem filed the response to the mother's petition on appeal, which the State joined without further argument.

only need to find grounds to terminate under one of the sections cited by the court to affirm. *Id.*

To terminate parental rights pursuant to Iowa Code section 232.116(1)(d), the State must establish:

> (1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.
> (2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

Iowa Code § 232.116(1)(d)(1)–(2); *see also In re T.S.*, __ N.W.2d __, 2015 WL 4758214, at *9 (Iowa Ct. App. February 25, 2015) (holding a prior CINA adjudication under Iowa Code section 232.2(6)(b), wherein a finding of physical harm to the child was made, must have occurred for the court to terminate parental rights pursuant to paragraph (d)).

The record establishes the State proved by clear and convincing evidence the mother's rights may be terminated to each child pursuant to paragraph (d). The record shows the children had a prior CINA adjudication seven years ago. In the current proceeding, the children were adjudicated CINA under Iowa Code section 232.2(6)(b), (c)(2), and (n), pursuant to the district court's finding physical injury occurred due to the mother's actions when attacking T.H.-2. The DHS worker testified there was no improvement following the mother's receipt of services. Consequently, the first requirement of paragraph (d) was met. *See* Iowa Code § 232.116(1)(d)(1).

The mother was then offered services to correct the situation; however, she only minimally participated. She demonstrated no improvement, instead demonstrating parenting skills that pose an imminent danger to the children. She also remained combative with family members and individuals involved in the underlying proceedings. Given this record, we do not agree with the mother's contention the State failed to offer her proper reunification services—which were, ostensibly, requested by the mother. Moreover, it is clear from the mother's behavior that more time will not correct the situation, particularly given DHS has been involved with the mother and children for the past seven years. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (noting a parent's past actions are indicative of her future behavior).

Furthermore, termination of the mother's parental rights is in the children's best interests. The children have been out of the mother's care for the past three years, and they are in need of permanency. The mother's mental health issues remain unresolved, despite the mental-health services offered, and still the children cannot be returned to her care. As the DHS worker noted:

> This worker cannot recommend reunification at this time not only due to the continued lack of mental health treatment, but also due to the lack of basic parenting capabilities. [The mother] does not have a home for her children . . . . [The mother] has been denied for housing due to her criminal assault charges and quite possibly her renting history. [The mother] also does not make adequate money for landlords to allow her to rent a larger home.

"We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998); *see also* Iowa Code § 232.116(2). The mother has continuously demonstrated she is unable to

parent the children, and it is in their best interests that her rights are terminated. Consequently, we affirm the order of the district court terminating the mother's parental rights to her three children.

**AFFIRMED.**